A02A1554. WELLSTAR HEALTH SYSTEMS, INC. v. GREEN.
(572 SE2d 731)

MIKELL, Judge.

Jonathan Thomas Green's wife died from a heart attack after an improperly credentialed nurse employed by Wellstar Health Systems, Inc. mistakenly dismissed Green's wife with an ear infection. Green sued Wellstar for the wrongful death of his wife, claiming that the nurse was negligent in treating Bonnell Green. Green amended his complaint to allege that Wellstar was negligent in failing to ensure that the nurse was properly credentialed when she treated Green's wife. The trial court granted partial summary judgment to Green on the negligent credentialing claim and denied Wellstar's motion on his battery claim. Wellstar appeals the grant of partial summary judgment to Green and the denial of its motion for summary judgment on Green's battery claim. For the reasons stated below, we affirm the grant of partial summary judgment to Green and reverse the denial of Wellstar's motion for summary judgment on Green's battery claim.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim.[2] Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.[3]

So viewed, the evidence shows that on the afternoon of November 29, 1999, Bonnell Green fell ill, and her husband took her to a Wellstar clinic. Nurse Teresa Odell, an employee of Wellstar Health Systems, Inc., treated Green. Odell concluded that Green had an ear infection and sent Green home after prescribing some antibiotics.

---

[1] *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).
[2] Id.
[3] *Supchak v. Pruitt,* 232 Ga. App. 680, 682 (503 SE2d 581) (1998).

Green suffered a heart attack around 3:30 the next morning and died. Green alleged that Wellstar was negligent in failing to ensure that on November 29, 1999, Odell was licensed by the Georgia Board of Nursing (the "Board") to practice as a certified family nurse practitioner.

The record shows that Odell received an associate degree in nursing and became a registered nurse in 1986. She earned a bachelor's degree in nursing in 1995 and a master's degree in nursing in 1997. On September 16, 1997, the Board provisionally licensed Odell as a certified nurse practitioner and verified her eligibility to sit for the American Nurse Credentialing Center's ("ANCC") certification exam. The Board also advised Odell that her provisional license would expire if she failed the certification exam. Odell took the exam on October 4, 1997, and failed it, causing her provisional license to expire.

Odell subsequently passed the family nurse practitioner certification exam given by the American Academy of Nurse Practitioners. Her certification was effective from December 1, 1997, to November 30, 2002. She was also certified by the ANCC as a family nurse practitioner; this certification was effective from December 1, 1998, to November 30, 2003. However, Odell was not authorized, either provisionally or otherwise, to practice advanced nursing by the Board when she treated Green. Odell mistakenly believed that after she passed the subsequent licensing exams the results would be automatically sent to the licensing board, and she would be licensed as a nurse practitioner. Thus, when Odell treated Bonnell Green, Odell was unaware that she was not properly licensed to do so. Expert testimony showed that Odell was qualified and trained by education to exercise her nursing judgment as an advanced nurse practitioner on November 29, 1999. However, she should not have been practicing without a license.

Green moved for summary judgment on the limited issues of Wellstar's duty to provide a properly credentialed nurse to treat Bonnell Green and the breach of that duty. Green's motion for partial summary judgment claimed that Wellstar had a duty to provide Bonnell Green with a properly licensed advanced nurse practitioner, and that it breached this duty by providing Odell, who was not officially licensed by the State, and that both the duty and breach thereof had been conclusively established by the trial court, by virtue of its order deeming Green's requests for admissions admitted. The remaining issue, causation, Green argued, was for the jury to determine. Wellstar filed a cross-motion for summary judgment on the claims of negligent credentialing, battery, and punitive damages. The trial court granted Green's motion for summary judgment on the limited issues of duty and breach and granted Wellstar's motion for summary judg-

ment on the issue of punitive damages. The trial court denied Wellstar's motion for summary judgment on the issues of negligent credentialing and battery.

1. In its first enumerated error, Wellstar argues that the trial court erroneously granted partial summary judgment on Green's negligent credentialing claim. Wellstar maintains that Georgia law does not allow a negligent credentialing claim against an employee of a corporate health care provider because vicarious liability applies instead. In support of its argument, Wellstar refers us to negligent entrustment cases such as *Bartja v. Nat. Union Fire Ins. Co.*;[4] where we held that a plaintiff cannot simultaneously pursue a claim for negligent entrustment where the employer has admitted that it is liable under the doctrine of respondeat superior. Wellstar's argument is misplaced.

A cause of action for negligent credentialing is an independent cause of action arising out of a health care institution's direct responsibility to its patients to take reasonable steps to ensure that medical care providers are qualified.[5] The fact that Odell was a Wellstar employee is not relevant because "negligent credentialing is not dependent on a master-servant relationship."[6] Thus, Wellstar's argument that a cause of action for negligent credentialing cannot be pursued fails.

2. Wellstar contends that by ordering Green's requests for admissions admitted, the trial court erroneously imposed upon it a duty distinct from the duty it actually owed, i.e., to provide a competent health care provider. We disagree.

During discovery, a dispute arose concerning the sufficiency of several of Wellstar's responses to Green's second request to admit. Green moved to determine the sufficiency of Wellstar's answers, and following a hearing the trial court, finding that Wellstar's answers to Green's request to admit did not comply with the requirements of OCGA § 9-11-36, ordered the following admissions entered against Wellstar:

(i) On November 29, 1999, Teresa Odell, RN was not authorized by the Georgia Board of Nursing to practice advanced nursing practice as a nurse practitioner; (ii) Teresa Odell, RN at no time informed Bonnell Green that she was not authorized by the Georgia Board of Nursing to practice advanced nursing practice as a nurse practitioner; (iii) Wellstar owes a legal duty to the public to provide patients with

[4] 218 Ga. App. 815 (463 SE2d 358) (1995).
[5] *McCall v. Henry Med. Center*, 250 Ga. App. 679, 681-682 (1) (551 SE2d 739) (2001).
[6] Id. at 682 (1).

health care providers who are duly authorized by the appropriate licensing agency with the State of Georgia to render the particular level of health care that has been provided to the patient; (iv) Bonnell Green was entitled to rely on Wellstar's provision of Teresa Odell, R.N., as indicative that Ms. Odell was a duly qualified family nurse practitioner authorized under the laws of the State of Georgia to provide advanced nursing care; (v) After Bonnell Green was accepted as a Wellstar patient on November 29, 1999, she was entitled to have her cardiac evaluation performed by a nurse practitioner, a physician's assistant, or a medical doctor duly licensed and authorized by the State of Georgia; and (vi) On November 29, 1999, Wellstar did not provide Bonnell Green with a cardiac evaluation performed by a nurse practitioner, physician's assistant, or medical doctor duly licensed and authorized by the State of Georgia before being discharged home.

OCGA § 9-11-36 (a) (2) provides that a request for admission is admitted unless a written objection is made within the applicable time period. Further,

If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission; and, when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or deny the remainder.[7]

If the party requesting the admissions moves to determine the sufficiency of the answers or objections, OCGA § 9-11-36 (a) (3) authorizes the court to order that the matter is admitted if it determines that an answer does not comply with the requirements of this subsection. "Any matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission."[8] Wellstar did not move to withdraw or amend its admissions. Imposition of discovery sanctions by the trial court is

---

[7] OCGA § 9-11-36 (a) (2).
[8] OCGA § 9-11-36 (b).

within its discretion and will not be reversed absent clear abuse of that discretion.[9]

When asked to admit "that on November 29, 1999, Teresa Odell, R.N., was not authorized by the Georgia Board of Nursing to practice advanced nursing practice as a nurse practitioner," Wellstar did not specifically deny the matter or set forth reasons why the matter could not be truthfully admitted or denied. Instead, Wellstar framed its answer as a series of admissions, such as

> Defendant admits that on or about November 29, 1999, Teresa Odell, R.N., had met or exceeded any and all academic, experience, and competency requirements set forth by the Georgia Board of Nursing to practice as an advanced nurse practitioner. Defendant further admits that as of November 29, 1999, Teresa Odell was properly and appropriately licensed as a registered nurse by the Georgia Board of Nursing.

In response to the request for admission that "Wellstar owes a legal duty to the public to provide patients with health care providers who are duly authorized by the appropriate licensing agency with the State of Georgia to render the particular level of health care that has been provided to the patient," Wellstar did not object as required, but answered that it had a duty to provide "properly trained, qualified and competent health care professionals to provide care." At the end of these admissions, Wellstar framed a nonspecific denial by stating that "[a]ny remaining inferences . . . which have not been responded to heretofore are denied."

As our Supreme Court has said, "[t]he language in OCGA § 9-11-36 (a) is clear, unambiguous, and unequivocal and means just what it says. One must comply strictly and literally with the terms of the statute upon the peril of having his response construed to be an admission."[10] Furthermore, although Green requested an admission amounting to a conclusion of law with respect to the duty of Wellstar to provide a licensed health care provider, our Supreme Court has also concluded "that requests for admission under OCGA § 9-11-36 (a) are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case."[11] It follows that Green made a proper request when he asked Wellstar to admit that it had a duty to the public to provide health

---

[9] See *Deep South Constr. v. Slack*, 248 Ga. App. 183, 185 (1) (546 SE2d 302) (2001).

[10] (Citations and punctuation omitted.) *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327, 331 (2) (486 SE2d 810) (1997).

[11] Id. at 329 (1).

care providers who were duly licensed to render the particular level of health care provided. As Wellstar gave unresponsive answers to the requests for admission, the trial court did not abuse its discretion by ordering the matters contained in those requests admitted.

3. Wellstar contends that the trial court nevertheless erred in granting partial summary judgment on Green's negligent credentialing claim based solely on the fact that Odell was not licensed. Again, Wellstar maintains that the duty it owed Green was to provide "competent" health care providers. Wellstar points us to the principle, established by *Andrews v. Lofton*,[12] that "the mere failure to have a license to practice medicine or surgery will not authorize an inference of negligence." They argue that negligence on the part of Odell cannot be inferred solely because she had no license to practice as a nurse practitioner, inasmuch as the duty of licensing is one owed to the state regulatory authorities. Wellstar's duty to the public was to provide "competent" health practitioners, as opposed to "licensed" ones. Further, Wellstar argues, "[a] breach of duty to the state does not necessarily involve a breach of duty to an individual."[13]

The authority upon which Wellstar relies is simply not pertinent at this stage of this case. While we agree that Wellstar has a duty to provide competent health care providers, that duty does not abrogate the negligent credentialing cause of action. Should we decide, as Wellstar urges, that it did not have a duty to provide a medical care provider who was licensed by the state of Georgia, we would essentially render meaningless the discovery sanctions authorized by OCGA § 9-11-36. For purposes of this litigation, Wellstar has admitted that it had a duty and breached that duty. Thus, the trial court's grant of partial summary judgment on these limited issues was appropriate.[14]

4. In Wellstar's last enumeration of error, Wellstar contends that the trial court erred in denying summary judgment on the issue of battery because there can be no actionable tort of battery where a patient consents to medical treatment.[15] The parties agree that Bonnell Green consented to medical treatment. The question is whether the consent was rendered invalid by fraud.[16]

OCGA § 31-9-6 (d) provides:

A consent to surgical or medical treatment which discloses in general terms the treatment or course of treatment in

---

[12] 80 Ga. App. 723, 728 (1) (57 SE2d 338) (1950).

[13] *Irwin v. Arrendale*, 117 Ga. App. 1, 7 (10) (159 SE2d 719) (1967).

[14] Causation, however, remains to be determined by a jury, who we expect will be appropriately charged on the relevant law.

[15] See *Hutcheson v. McGoogan*, 162 Ga. App. 657, 659 (292 SE2d 527) (1982).

[16] OCGA § 31-9-6 (d).

connection with which it is given and which is duly evidenced in writing and signed by the patient or other person or persons authorized to consent pursuant to the terms of this chapter shall be conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same.[17]

The evidence is undisputed that Odell had no knowledge that her license was not current, and that there were no representations made by her or questions asked by the Greens about her license. Nonetheless, Green argues that the doctrine of constructive fraud, as discussed in *Southeastern Greyhound Lines v. Fisher*,[18] precludes summary judgment on the battery claim because under that doctrine, even if Wellstar was innocently mistaken in holding out Odell as a licensed nurse, Wellstar cannot benefit from its representation if Green acted on it to her detriment. *Fisher* is inapposite. It did not involve the application of OCGA § 31-9-6, which unequivocally states that a written consent is presumed valid absent evidence of fraudulent misrepresentations. Also, it is factually distinguishable as there was evidence in *Fisher* that a fraudulent misrepresentation was made to induce the plaintiff to sign a release of all claims. Here, there was no evidence that Odell made any representations whatsoever about her license to induce Green to sign the consent to treatment form. Thus, the trial court erred in denying Wellstar's motion for summary judgment on the issue of battery.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 18, 2002

*Browning & Tanksley, Kathryn J. Tanksley, Henry D. Green, Jr.*, for appellant.
*Rosser A. Malone*, for appellee.

---

[17] Id. See *Campbell v. Breedlove*, 244 Ga. App. 819, 822 (1) (535 SE2d 308) (2000).
[18] 72 Ga. App. 717, 721-722 (4) (34 SE2d 906) (1945).